FILED
12-14-2021
John Barrett
Clerk of Circuit Court
2021CV007560
Honorable Laura Gramling
Perez-32
Branch 32

| | | |
|---|---|---|
| **STATE OF WISCONSIN** | **CIRCUIT COURT** | **MILWAUKEE COUNTY** |

| | |
|---|---|
| WANDA SHOREY,<br>200 Southtowne Drive, Apt. 321<br>South Milwaukee, WI 53172, | **SUMMONS**<br><br>Case No.: |
| Plaintiff, | Classification Code: 30301 |
| v. | |
| MIDLAND CREDIT MANAGEMENT, INC.<br>350 Camino De La Reina, Suite 300<br>San Diego, CA 92108, | Amount claimed is greater than the amount under Wis. Stat. § 799.01(1)(d). |
| Defendant. | |

THE STATE OF WISCONSIN, To each person named above as a Defendant:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within twenty (20) days of receiving this Summons, you must respond with a written Answer, as that term is defined in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an Answer that does not follow the requirements of the Statutes. The Answer must be sent or delivered to the Court, whose address is: Clerk of Courts, 901 North 9th Street, Milwaukee, Wisconsin 53223, and to Plaintiffs' attorney, whose address is Ademi LLP, 3620 East Layton Avenue, Cudahy, Wisconsin 53110. You may have an attorney help or represent you.

If you do not provide an answer within twenty (20) days, the Court may grant Judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A

1

**EXHIBIT 1**

Judgment may be enforced as provided by law.  A Judgment awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated:   December 14, 2021　　　　　　　　　　　　ADEMI LLP

　　　　　　　　　　　　　　　　　　　　　　　By: *Electronically signed by Mark A. Eldridge*
　　　　　　　　　　　　　　　　　　　　　　　　　Mark A. Eldridge (State Bar No. 1089944)
　　　　　　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*

<u>Mailing address:</u>
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Phone No.: 414-482-8000

FILED
12-14-2021
John Barrett
Clerk of Circuit Court
2021CV007560
Honorable Laura Gramling Perez-32
Branch 32

STATE OF WISCONSIN　　CIRCUIT COURT　　MILWAUKEE COUNTY
　　　　　　　　　　　　CIVIL DIVISION

| | |
|---|---|
| WANDA SHOREY,<br>200 Southtowne Drive, Apt. 321<br>South Milwaukee, WI 53172,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.<br>350 Camino De La Reina, Suite 300<br>San Diego, CA 92108,<br><br>　　　　　　　　Defendant. | **COMPLAINT**<br><br>Case No.:_____<br>Classification Code: 30301<br><br>**Jury Trial Demanded** |

COMES NOW Plaintiff Wanda Shorey, by Plaintiff's Attorneys, Ademi LLP, and for a cause of action, states as follows:

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to Wis. Stat. § 801.05(3). Defendant's collection activities were directed at Wisconsin residents in Wisconsin. Venue in Milwaukee County is proper because the claim arose in Milwaukee County, and Defendant attempted to collect a debt in connection with a consumer transaction that occurred in Milwaukee County. Wis. Stat. §§ 801.50; 421.401(1)(a) ("The venue for a claim arising out of a consumer transaction or a consumer credit transaction is the county: … Where the customer resides ….").

## PARTIES

3. Plaintiff is an individual who resides in Milwaukee County.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, § 421.301(17), Wis. Stats., in that Plaintiff engaged in a consumer transaction.

6. Defendant Midland Credit Management, Inc. ("Midland") is a foreign corporation with its principal place of business located at 350 Camino De La Reina, Suite 300, San Diego, CA 92108.

7. Midland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Midland is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Midland's website contains an "FAQ" webpage, which states:

- Who is Midland Credit Management (MCM)?

> Midland Credit Management (MCM) is a company that helps consumers resolve past-due financial obligations. MCM has serviced millions of collection accounts over the years with the goal of helping consumers achieve financial freedom. MCM works with consumers and also partners with Midland Funding LLC, one of the nation's largest buyers of unpaid debt.

https://www.midlandcredit.com/faqs/ (last accessed November 22, 2021).

10. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

2

11.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g.*, *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordge v. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

12.     The primary purpose of Midland's business, and Midland's principal purpose, is the collection of consumer debts.

13.     Midland is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars.  The 2013 10-K

3

filing for Midland's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

14.　　According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Encore paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

15.　　Midland's role generally is to service defaulted consumer debts purchased and held by Midland and its affiliates. Midland uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts.

16.　　Neither Midland nor any of its affiliates purchase defaulted consumer debts with the purpose of selling them at a profit. *See, e.g.*, https://www.midlandcreditonline.com/wp-content/uploads/2015/08/Consumer-Bill-of-Rights.pdf (last accessed: February 25, 2019) ("We do not resell accounts to third parties in the ordinary course of our business.").

17.　　Even when acting as the purchaser of defaulted consumer debts, the primary purpose of Midland is debt collection. *See, e.g., Barbato*, 916 F.3d at 267; *Mitchell*, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

18.　　Midland, along with its affiliate Midland Funding, LLC, by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually.

4

Wisconsin Circuit Court Access (CCAP), for example, shows Midland or Midland Funding, LLC as a named party in over 1,600 small claims lawsuits against Wisconsin consumers so far in 2019 in Milwaukee County alone. Upon information and belief, all or almost all of these actions were filed to collect consumer debt from Wisconsin residents.

19. Upon information and belief, when Midland obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

20. Midland is a debt collector as defined in 15 U.S.C. § 1692a.

21. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

22. On its face, Wis. Stat. § 427.103(3) applies both to creditors collecting on their own behalf and to creditors who hire other debt collectors to collect on the creditor's behalf.

23. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

24. Midland is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself and others, both directly and indirectly through collection agencies.

25. Midland is also a "merchant" as defined in the WCA, as the alleged debt arises from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant]

5

includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

26.  The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

27.  Midland is a debt collector under this arrangement. Wis. Stat. § 427.103(3).

## FACTS

28.  On or around March 2, 2021, Midland mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Midland, with an "Original Creditor" listed as "COMENITY BANK." A copy of this letter is attached to this complaint as Exhibit A.

29.  Upon information and belief, the alleged debt referenced in Exhibit A was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

30.  Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

31.  Upon information and belief, Exhibit A is a form debt collection letter, used by MCM to attempt to collect alleged debts.

32.  Exhibit A contains the following settlement offers:

> We would like to make an arrangement with you to resolve the above referenced account using the following:
> · Bi-weekly payments as low as $25 continuing until paid
> Please hurry! This offer is available for 15 days from the date of this letter. Call me immediately at 877-898-5129.

33.  The representation that the offer expires "15 days from the date of this letter" is plainly false, deceptive, and misleading because, upon information and belief, MCM and/or

6

Midland Funding would have been willing to settle Plaintiff's alleged debt in accordance with the proposed payment plan at any time.

34. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

35. Such false statements are materially false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

36. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775-76 (7th Cir. 2007).

37. <u>Exhibit A</u> does not include the safe harbor language prescribed in *Evory*.

38. The deadlines to respond to the settlement offers included in <u>Exhibit A</u> is a sham. Upon information and belief, there is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

39. Plaintiff was misled and confused by <u>Exhibit A</u>.

40. The unsophisticated consumer would be misled and confused by <u>Exhibit A</u>.

7

### *The FDCPA*

41. Congress has described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

42. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

43. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

44. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

46.　15 U.S.C. § 1692e(5) specifically prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."

47.　15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

### *The WCA*

48.　The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

49.　To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, and instructs that these protections must be "liberally construed and applied" in order "to induce compliance with the WCA and thereby promote its underlying objectives." Wis. Stat. §§ 421.102(1), 425.301; *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).

50.　To further the objectives underlying the WCA, the Wisconsin legislature has empowered the Wisconsin Department of Financial Institutions and the Wisconsin Department of Justice to bring actions against any person who violates the WCA, and has further provided Wisconsin consumers with an array of protections and legal remedies, including a private cause of action to temporarily or permanently enjoin conduct that violates the WCA or the federal consumer credit protection act and recover classwide statutory, actual, and punitive damages on behalf of all consumers who suffer similar injuries. Where a consumer seeks injunctive or declaratory relief, the WCA provides that "it shall not be a defense to an action brought under this section that there exists an adequate remedy at law." *See* Wis. Stats. §§ 421.102(1), 425.301, 425.401, 426.109(1), 426.110(1); 426.110(4)(e), 426.301.

51. The private cause of action is essential to deterring violations and furthering the WCA's underlying objectives:

> The provisions of the WCA for private enforcement through the use of civil legal remedies by the individual consumer are some of the most important sections of the Act. The function of private enforcement is both to secure the rights of the individual and simultaneously to assist public authorities in achieving compliance for the ultimate benefit of all consumers.

Thomas D. Crandall, "Wisconsin Consumer Credit Laws Before and After the Consumer Act," 1973 Wis. L. Rev. 334, 376-77.

52. Thus, private actions under the WCA benefit not only consumers whose rights have been violated and competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law, but also the public authorities and the public generally, who would otherwise be burdened with the costs of using public resources to achieve compliance.

53. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

54. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

55. Wis. Stat. § 421.108 provides: "Every agreement or duty within chs. 421 to 427 imposes an obligation of good faith in its performance or enforcement. 'Good faith" means

10

honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing."

56. Wis. Stat. § 426.110 provides, in relevant part:

(1) … [A]ny customer affected by a violation of chs. 421 to 427 and 429 or of the rules promulgated pursuant thereto or by a violation of the federal consumer credit protection act, or by conduct of a kind described in sub. (2), may bring a civil action on behalf of himself or herself and all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429. [...]

(2) Actions may be maintained under this section against any person who in making, soliciting or enforcing consumer credit transactions engages in any of the following kinds of conduct:

…

(c) False, misleading, deceptive, or unconscionable conduct in enforcing debts or security interests arising from consumer credit transactions.

57. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

58. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

59. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt, or threaten to enforce a right with knowledge or reason to know that the right does not exist."

60. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

11

62. By including a deadline alongside various settlement offers, Exhibit A includes representations which are false, deceptive, and misleading because the settlement offers included in the letters would still be available to Plaintiffs after the purported deadline.

63. Exhibit A fails to include the safe-harbor language prescribed by the 7th Circuit. *See Evory*, 505 F.3d at 775-76.

64. Defendant violated 15 U.S.C. §§ 1692f and 1692f(8).

## COUNT II – WCA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. By including a deadline alongside various settlement offers, Exhibit A includes representations threatens to revoke such offer, an action which Midland did not intend to take.

67. Defendant violated Wis. Stat. §§ 421.108, 426.110, 427.104(1)(g), 427.104(1)(h), and 427.104(1)(L).

## CLASS ALLEGATIONS

68. Plaintiff bring this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) from November 23, 2020 through the present, (d) not returned by the postal service.

69. The Class is so numerous that joinder is impracticable.

70. Upon information and belief, there are more than 50 members of the Class.

71. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

12

72. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

73. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

74. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

75. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)　actual damages;

(b)　statutory damages;

(c)　injunctive relief;

(d)　attorneys' fees, litigation expenses and costs of suit; and

(e)　such other or further relief as the Court deems proper.

Dated: December 14, 2021

**ADEMI LLP**

By:　*Electronically signed by Mark A. Eldridge*
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com

13

jfruchter@ademilaw.com
bslatky@ademilaw.com

14